### Case No. 6,062.

HARDY et al. v. The RUGGLES.

[2 Hughes, 78.] [1]

District Court, E. D. Virginia. June 28, 1875.

SHIPPING—OLD AND NEW VESSEL—REPAIRS—MARITIME LIEN.

1. A propeller steamboat, enrolled and owned in New York, was burnt, while on a voyage to North Carolina, to the water's edge. The hull, with steam machinery and propelling wheel on board, was towed to Smithfield, Va., and there rebuilt; the old hull being used with engine frame and boilers standing; but the length of the vessel was increased. *Held*, that this was an old vessel rebuilt, and not a new vessel built.

2. Being still the same vessel, it was a foreign and not a domestic vessel in Virginia.

3. The owner being a stranger, his agent a stranger, and the mechanic who rebuilt the vessel being without responsibility, and the credit of the vessel being a necessary means of obtaining materials for rebuilding the vessel, and these having been furnished on the security of the vessel; *held*, that a lien in admiralty attached in favor of material-men.

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

Libel in admiralty. The steam propeller Ruggles, Charles Early master, was owned in New York by N. Barber, and was enrolled in New York. While in the waters of North Carolina in 1874, she was burnt to the water's edge; her hull remaining untouched, and her steam engine and propeller remaining in the hull. While lying in this condition in Elizabeth City, North Carolina, a contract in writing was made between Samuel Seed of the first part, and the owner of the second part, for finishing and completing this propeller, as to the carpenters' and joiners' work. The length of the vessel was to be increased from what it was originally to 116 feet. The old dimensions in other respects were to be preserved with very slight change. The propeller's hull was then towed to Smithfield, Virginia, where Seed has a shipwright's establishment. Seed was a resident of New Jersey, but was conducting this business at Smithfield, Virginia. The contract between him and Barber was signed on the 9th of July, 1874. The contract provided for an agent to be appointed by Barber. Barber was absent from Smithfield most of the time from the date of the contract to October. During all this time the work progressed under the contract; some nineteen hands being employed as a general rule. Seed was a man wholly without property, or other basis of credit, and dependent upon his labor and its results for what credit was given him. During Barber's absence he left Charles Early, former master of the propeller, to look after his interests and supervise the reconstruction of the vessel. Barber was a stranger in Smithfield, and his pecuniary responsibility unknown. So was Early. Most of the timber and lumber for the reconstruction of the propeller was obtained from the lumber mill of Thomas A. Hardy, which was situated a few miles from the ship-yard where the propeller was undergoing reconstruction. Before the lumber was furnished by Harrison & Parker, who had charge of the mill, they inquired as to the source from which they were to receive payment for their lumber. The result of the information obtained by them was that Seed was to be paid for the work, as it progressed, every two or three weeks; they could be present when he was paid and then collect their bills; and, if payment was not made, as their lumber was to go into the propeller, they would have the security of the vessel. The proof is that they charged the lumber to Seed in a rude book not kept by a skilled bookkeeper; but relied upon their recourse on the vessel if payment through Seed should not be forthcoming. The proof is positive that they did not depend upon Seed, or rely on his responsibility alone, but looked ultimately to the vessel as their security. In lengthening the vessel it was made 123 feet 6 inches long, instead of 116. Barber, in evidence, denies that he authorized or knew until October of the increased length. But either he or his

agent was present on the vessel during the whole time of its rebuilding; and it is not credible that the extra length was put upon the vessel except by order of his agent or himself. The job, on the part of Seed, was a lump job, and it is not to be supposed that, working all the time under the eye of Early or Barber, Seed would have put upon himself extra work by adding of his own accord to the contract length of the vessel.

The libel here is for the lumber and timber employed in the extra work. E. J. Seed, the foreman of Samuel Seed, testified that the extra work was ordered by Barber and Early, chiefly by Early. He testifies that Early directed him to order the lumber for the extra work from Parker, Hardy's agent. This extra lumber was sent up from the mill to the ship-yard, along with the lumber ordered by Samuel Seed, and it was marked extra afterwards on the rude day-book kept at the mill, when it could be ascertained which was for the extra work and which for the contract work. When Parker first got an order from E. J. Seed for lumber for the extra work, he took the pains to go to the ship-yard and see Early about it. He thereupon was authorized by Early to send this lumber upon the order of E. J. Seed, as the latter should need it. It is proved that this lumber, except cullings, went into the propeller. It is not proved that any of it has been paid for, except to the amount of the small credit which is entered on the bill filed with the libel.

The second claim in the libel is for a bill of lumber furnished to this propeller by R. J. & W. Neely & Co. on the order of Samuel Seed. Of the 4,000 feet charged for in the bill for this lumber filed with the libel, it is proved that 1,280 feet were used in other structures or ways than on the propeller, and this amount rather exceeds in value the credit of $35 which is entered on the bill. It was strongly asserted in argument by counsel, and stated on hearsay evidence by a witness, that still another part of the lumber charged to the propeller in Neely's bill was used for the flooring of a Baptist church near Smithfield; but the defendant failed to prove by any one connected with the work on that church, or having personal knowledge of the facts, that such use was made of it. The evidence to that effect is wholly upon hearsay.

J. H. Gale. R. F. Graves, and Scarburgh & Duffield, for libellants.

R. S. Thomas and W. H. C. Ellis, for respondents.

HUGHES, District Judge. The foregoing are the principal facts disclosed by the evidence in the case, in which there is very little conflict. Two questions arise upon these facts, viz.: First. Was this the repairing and completing of an old vessel, or the building of a new one? Second. Have the materialmen a lien upon the vessel for the material furnished?

Unless the vessel is the same in the eye of the law with the propeller which was burnt, there is no lien for the materials furnished by Hardy and Neely & Co.; for it has been long ago determined by the United States supreme court that in the United States there is no maritime lien for the materials furnished for the building of a ship before it is launched. We cannot go back of the decisions of the supreme court to inquire whether they really declare and expound the admiralty law as it obtains among civilized nations at large; we must implicitly abide the decisions of that court on that subject. And that court has set this question at rest in the United States by its decisions in the cases of People's Ferry Co. v. Beers, 20 How. [61 U. S.] 393, and Roche v. Chapman, 22 How. [63 U. S.] 129. Therefore, the first inquiry in this case is: Was the work put upon the Ruggles such as to make her a new ship? Her hull was left intact. The frame of the steam engine, the boiler, the apparatus connected with the propelling wheel, and the wheel itself remained. There was no change of the model of the vessel except such as was necessary to giving her greater length. All the old timber in the hull that was sound was retained in its former position. There was no breaking up of the vessel. It was, as to the hull, preserved just in the constituent condition in which the fire left it, except as to the work of lengthening. Molloy, following all the old authorities, says, "If a ship be ript up in parts, and repaired in parts, and taken asunder in parts, yet she remains the same vessel and not another; nay, though she hath been so often repaired that there remains not one stick of the original fabric." This is still the general doctrine, and it is very rigidly adhered to by the government of the United States in its laws of registration as to the names of vessels. This being the same vessel as the Ruggles, it is a foreign vessel. The contract for repairing it was made in another state. It was brought from another state into this to be repaired in this. Her owner is not a citizen or resident of this state; nor is her master; nor is the mechanic a permanent resident, who put the work upon her, and in the character of contractor with the owner ordered the lumber which was used under the contract. The same was the case as to the mechanic foreman who, in the character of agent of the owner, ordered the lumber and timber used in the extra work.

2. Under these circumstances, this being a foreign vessel, does the admiralty law give a lien for the material used upon this vessel under the eye of its owner or his agent, for the extra work that has been described? Upon the principles decided in the case of The Grapeshot, 9 Wall. [76 U. S.] 129, this question must be answered in the affirmative: (1) The lumber and timber in question were necessary for the extra repairs, and the repairs were necessary to putting the ship in seaworthy condition. The owner being a

stranger, the agent a stranger, the workman being without money, (2) the credit of the vessel was necessary to be resorted to. (3) The workman who ordered the materials ordered them on the credit of the ship, and the materials were furnished on the credit of the ship. The case of The Eledona [Cases Nos. 4,340 and 4341] differs from the present one in the fact that there was no necessity in that case for a resort to the credit of the vessel. There the mast was furnished to the contractors on their order, not to the master or his crew; and there the price of the mast was actually paid to the contractors by the master, who was supplied with money. Here the materials libelled for were never paid for by owner or master. The master had no money with which to do so. The inference from all the facts is that the owner has none. There has not been from the beginning, and is not now, any source from which payment for the extra materials can come, except the credit of the vessel. This constitutes the very difference between the two cases. There the credit of the vessel was not necessary. Here it was necessary.

I therefore, on the whole case, must decide that the libellants should be paid. Mr. Hardy must recover the whole balance of his bill as claimed. Messrs. Neely & Co. should recover the original amount named, subject to deductions, which bring the amount he may recover to $61. I will so decree.